FINNELL, &c.
*vs.*
SANFORD, &c.

---

Case 34.

ORD. PET.

## Finnell, &c. *vs.* Sanford, &c.

APPEAL FROM KENTON CIRCUIT.

1. The capital stock of a bank consists of the money paid in on the stock subscribed by the stockholders; and all stock when paid in is capital stock. There is no difference between the stock originally subscribed for in the "Trust Company Bank," and that obtained by deposits.

2. Though it was the duty of the Trust Company Bank to have required that the stock subscribed for should be paid in money, yet if they thought proper to receive a note in lieu of the money, and treat it as capital stock, the obligors in such note cannot avoid the payment of such note, they will not be permitted to take advantage of their own act to prejudice the public who confided in them.

3. Nor is it any defense to a suit upon such stock note to alledge that there are sufficient funds to meet the debts of the company, without enforcing its collection.

[The facts of the case are stated in the opinion of the court.—REP.]

*Menzies & Pryor* for appellants—

The circuit court did not err in overruling the demurrers to the defense set up by the defendants. The stock for which the note for $37,500 was given was genuine stock, and there was therefore a valid consideration for the note.

It will be seen, by inspecting the original and amended charters and the by-laws, that the stock deposits were limited to $1,400,000. It was discretionary with the bank to fix the capital stock at any amount between $100,000 and $1,400,000. Two modes were provided by which stock might be taken; and although this stock of Sanford & Co. is called capital stock in the amended petition and in the answers, yet such designation cannot change its character, as there was no limit by the charter to the amount of the stock; and all stock taken after the $100,-000 had been subscribed, either by depositing money or by executing notes for money which was received by the bank as so much money for that amount of stock, as deposit stock, was genuine, and in pursuance of the charter. The note was received by the bank as so much money; the intention to take the deposit as a deposit for stock is clear, and the failure to make an entry to that effect cannot change the object and purpose. That provision of the charter is merely directory. The issual of a certificate, or the failure to do so, cannot change the nature of the transaction. (*Throp vs. Woodhol*, 1 Sanders N. Y. Chancery Reports, 441.)

The stock was taken in April, 1854. The bank was in operation until November, 1854. Sanford was the president of the bank when the note of Sanford & Co. was given, and he is estopped to deny

FINNELL, &c.
*vs.*
SANFORD, &c.

the organization of the bank, its validity, or the validity of the stock. (*Littell vs. O'Brien*, 9 *Mass. Rep.*, 423; *Selma vs. Tennessee Railroad Co.*, 5 *Alabama*, 787; *Ely vs. Sprague*, 1 *Clark's N. Y. Chan. Rep.*, 351; *Wight vs. Shelbyville Turnpike Road Co.*, 16 *B. Monroe*, 5; *Smith vs. Mississippi and Alabama Railroad Co.*, *Miss. Reports by Smead & Marshall; Angel & Ames on Corporations*, 265; *The case of Vermont Central Railroad Company vs. Cloyes*, 21 *Vermont Reports*, 30.)

Sanford & Co. cannot be permitted to take advantage of their own act in executing a note for money when they should have paid the money. (*Danberry and Norwalk Railroad Co. vs. Wilson*, 22 *Conn. Rep.*; *McRhea vs. Russell*, 12 *Iredell*, 224.)

The commissioners represent the creditors and the stockholders, and are prosecuting this case for their benefit, and insist that Sanford & Co. are bound to pay the $37,500, although bills of exchange and promisory notes may have been given to the banks upon the issuing of the bank notes for circulation.

This $37,500 note was given to secure the redemption of bank notes, and Sandford & Co. are liable in the first instance. The holders of the bank notes, and the other stockholders, had no notice that the bank notes were issued without the payment of the stock in money, and that it was not ready for the redemption of the notes put into circulation. This issuing of notes, without a money basis for their redemption, was a fraud upon the public—the bank note holders. Sandford & Co. cannot be exonerated because there are other assets in the hands of the commissioners sufficient to satisfy the bank note holders, especially when it is not pretended that there is anything with which the commissioners can pay the stockholders who paid money for their stock. In any view of the case Sanford & Co. are bound to pay this note. (*Gray vs. Redd*, 4 *B. Monroe*, 199; *Ponter vs. Hanley*, 1 *Barb. Chancery Reports*, 122.)

*W. B. Kinkcad* on the same side—

The defendant, Sandford, answers (first by an original and then by a number of amended answers,) as to this claim for $37,500, as set forth in the original and amended petition. He says this note was given for stock in said bank after more than $100,000 in stock had been subscribed in said bank; that the notes of said bank, which were issued thereon, were given for bills of exchange, &c., at a short day, which went into the hands of the commissioners, and by which all the notes of the bank, so issued, can be redeemed, without collecting the note sued on, &c.; denies that the stock was issued to defendants, &c.

Such is the substance of all the answers to the claim of $37,500.

To each of these answers the plaintiffs demurred, but their demurrers being overruled, judgment was rendered for defendants as to this claim. The correctness of this ruling of the court I shall briefly discuss.

I contend, in the first place, that the answers presented no defense to the petition, as originally framed. If these answers are good it is because they present a case of no consideration for the note. In my opinion they show no such thing. He says the note was given for stock, but that no certificate was issued to defendants. If he had a right to the certificate, this formed just as good a consideration as though the stock had been issued. Having a right to the certificate he might have demanded it of the bank, and on their refusal could have forced its issue by the court of chancery. This idea, then, in the answer, is thus disposed of beyond question; for this view is fully sustained by authority.

But he says this note was given for stock after more than $100,000 had been subscribed in said bank. I do not conceive this to be a good defense to the note. It is well settled that even, though a bank charter may require that money for stock shall be paid, still a note given for the stock can be recov-

ered upon.  It does not lie in the mouth of the ma-
ker of such a note to object to its payment when it
is owing to his delinquency that the money is not
paid, and a note taken.  The authorities fully sus-
taining this point are cited in both the arguments
above referred to.  The right then to the certificates
of stock is a sufficient consideration for the note—
this express promise to pay therefor—unless the
whole transaction is void.

The stock in this bank is not limited, as seems  to
be supposed by defendants, to $100,000.  There is a
method pointed out in the charter by which a depos-
itor may become a stockholder, which is illimitable
in amount by the charter, but is limited  by the by-
laws to $1,400,000 of "stock deposits."

By the charter the capital stock was limited to
$100,000, but all limit as to the increase of stock by
stock deposits was removed, and was only restrain-
ed by the by-laws.  It is not contended that this note
was for stock in excess of the $1,400,000.

True, the charter prescribes the particular manner
in which this stock must be taken, and different from
the original $100,000.  It permits it to be made by
deposits, and dividends thereon.  But can it be con-
tended that had there been a departure from the pre-
cise method pointed out by the charter, for subscrib-
ing and paying for stock for the original $100,000—
for instance, a note given when money should have
been paid, or the like, that such an irregularity would
vitiate or prevent a recovery upon such note.  Nei-
ther, then, could an irregularity in the mode of tak-
ing these 'stock deposits' make a note, given for the
deposit, void.

Suppose, for instance, Sandford had a deposit of
$50 in this bank, and made known his intention to
become a stockholder, and had the same so entered
upon the books of the bank, and then the bank had
loaned him this $50, taking his note therefor, giving
him dividends thereon till it amounted to a share, can
it be doubted that when he had thus a right to a cer-

tificate of stock, he could, in a suit upon this note avoid its payment by a plea of no consideration? We think the consideration is just as valid for such a note as it would have been for one given for stock— part of the original $100,000.

Again : the defendant shows that a circulation was issued by the bank, based upon the stock for which this note was given. But he says that this issue was represented by bills of exchange at short day, and sufficient to redeem all this circulation. Now I contend that here was a good consideration for the note, as shown by the answer. This great issue of notes was calculated to impair the value of the other notes of the bank previously issued, and which, in fact, among other causes, contributed to the ruin of the bank. The fact that such an issue of notes was made formed a consideration for this note. It will not do to say that the paper taken for these notes, thus issued, would redeem them all. This is a matter that the defendant can't know. Such a defense cannot be set up in pleading where the party must state facts. It is impossible for any one to say that any bills of exchange or notes payable at a future day, on a large number of persons, will be paid, or how much thereof will be paid. No, this issue was a sufficient consideration for the note—the damage which might arise to the bank therefor, for her increased liability growing out of the issue of so many of her notes, which she was bound to redeem whether her debtors paid her or not.

But if I am mistaken in all this, I contend, then, that the amended petition makes out a ground for a recovery of a judgment on this $37,500, and which the defendant has failed, effectually, to answer. Even if the note for stock was void, still I contend Sandford ought to pay this sum of $37,500.

It was a fraud upon the *community*, that is, first, upon the genuine stockholders of said bank. The issue of such an amount of spurious stock might and would injure the value of the genuine stock. It was

a fraud upon the bill holders and depositors of said bank, by issuing such an increased circulation as to' impair the value of the notes of the bank. The commissioners who bring this suit are the representatives of this community of stockholders, bill holders, and depositors of said bank. Sandford was the president and the officer who was the author and perpetrator of this fraud, and he cannot now escape from the obligation thus incurred, and the fraud thus perpetrated, by saying that the charter conferred no such authority to do such an act. Having done all this damage, he ought to be required to make it good.

*Benton & Nixon* for appellees—

The appellees rely upon the invalidity of the subscriptions for stock. The petition alledges that the indebtedness is for capital stock subscribed after more than $100,000 had been taken. The answer also alledges it, and the demurrer acknowledges it. The $12,500 note is in the same condition, with this difference, that the deposit was made and subsequently drawn out. The chief question is, is the stock valid? We insist that it was not, and refer to our argument in *Worthington vs. Greer*, before the court. The appellants do not contend that the stock was taken by deposits being first made, and that the proceeding was in conformity to the 5th section of the charter.

If any force is to be given to an act of the legislature, granting a charter and limiting stock, it would seem there could not be two opinions on this question. If the stock was limited to $100,000 it was an unauthorized act to attempt to sell stock exceeding that amount. Suppose this was a proceeding by Sandford & Co. against those who subscribed for and held the $100,000 of stock taken according to the provisions of the charter, to let in and recognized as members of the corporation, and relied, as ground of their claim, that the directors had received their

subscriptions, and taken their notes, instead of money, in payment for their stock, could not and would not the stockholders who had paid their money have replied that the directors had no authority, by the charter, and would not such objections have been available? There can be no doubt that it would.

In *Tracy vs. Yates*, 18 *Barbour*, 152, it was held that when a party gave his note for stock he was not to be recognized as a stockholder until his note was paid and a certificate issued. In 4 *Halstead*, 333, where more stock was subscribed than the charter allowed, it was decided that the subscriptions should be scaled until the excess was cut off.

*Angel & Ames*, sec. 265, though cited by appellants, on examination will be found an authority in our favor. We refer also to *sections* 256, 260, and *page* 268, as authority on this point.

A corporation cannot enforce a mortgage taken contrary to to the provisions of its charter. (*Greer vs. Lyman*, 3 *Sanford's Chancery Reports*, 285.) The court is referred to the 13*th volume Legal Intelligencer*, where the court, after thorough discussion, held the new stock to be void. The authorities referred to by appellants are not analogous cases—none of them were for new stock. The question presented is not whether there was an assignment in fact, but whether the assignee paid any consideration therefor, or in the language of the Code, is he the real party in interest or not?

Judge SIMPSON delivered the opinion of the court:                January 28.

This was an action by ordinary proceedings, in the name of the commissioners who had been regularly appointed to close up the affairs of the Trust Company Bank, against the defendants, on two promissory notes executed in the name of B. F. Sandford & Co., one for the sum of $37,500, and the other for the sum of $12,500.

The plaintiffs filed several amended petitions, in which they alledged that the defendants became

stockholders in the Kentucky Trust Company Bank to the amount of $50,000, and paid for said stock $12,500 in cash, and executed their note for $37,500, for the balance of the price of the stock, which was one of the notes sued on; that certificates for that amount of stock were issued to the defendants, and that bank bills or circulating notes of said bank were issued and put in circulation to the full amount of said stock, and on it as a basis. They also alledged that the defendant, Sandford, being the president, and having the control and management of said bank, caused the teller thereof, about the time of its failure, to credit the Savings Bank of Cincinnati, in which both the defendants were largely interested, with the sum of $12,500, and he at the same time, executed and delivered to the bank the other note sued on, for the same amount.

The defense which the defendant, Sandford, set up and relied on was, substantially, that the notes sued on were executed upon an illegal sale of stock, made after the capital stock of the bank had all been disposed of; and that the plaintiffs had, in cash and good and solvent bills receivable, independent of stock notes, means amply sufficient to redeem all the circulation of said bank; and that the collection of the notes sued on, or any part thereof, was not necessary for that purpose.

This was considered by the court below a valid defense to the action upon the note for $37,500, and a demurrer to that part of the answer, in which it was relied upon, was overruled. The pleadings of the defendants are presented in the record in a very confused manner, and we are at some loss to determine what part of the answer of the defendant, Park, was deemed by the court a sufficient defense to the action, so far as a recovery was sought by it upon the same note, but we have concluded that it was that part of the answer in which the same matter was relied upon that Sandford, the other defendant, had relied upon, to-wit, that the plaintiffs

had in cash, and other available assets of the bank, means enough to redeem all its notes in circulation, and that therefore the collection of said note, or any part of it, was not necessary for that purpose.

This defense having been adjudged sufficient upon demurrer, and the plaintiffs abiding by their demurrer, a judgment was rendered in bar of so much of their action as was founded on the note for $37,-500, and from that judgment they have appealed.

The first inquiry that arises in the case relates to the power of the bank to increase its stock at the time the sale was made to the defendants, as well as to the legality of the mode which was adopted to enable the latter to become stockholders, and to secure to the bank the payment of the value of the stock which they had purchased. This inquiry renders it necessary to examine the provisions of the act under which the bank was incorporated, and of the subsequent acts by which its charter was amended.

It was originally incorporated by the name of the "Savings Bank of Covington." Its capital stock, under its original charter, was fifty thousand dollars, which might be increased to one hundred thousand dollars, independent of stock deposits, divided into shares of one hundred dollars each. Commissioners were appointed to open books and obtain subscriptions of stock. The sum of five dollars on each share was to be paid to the commissioners at the time of subscribing, and then five dollars on each share every thirty days thereafter, until the whole stock should be paid. Any depositor who should make known his intention to become a stockholder, and have the same so entered on the books of the corporation, was to be entitled to dividends in proportion to the amount deposited, and such dividends were to be added to the deposit until the amount should be equal to a share, when a certificate of stock was to be issued. It was made a bank of deposit, but had no right to issue and circulate any of its own notes or bills.

Its name was afterwards, by amendment to the charter, changed to the "Kentucky Trust Company Bank."

In January, 1852, its charter was again amended, and the privilege conferred upon it of issuing bank notes, payable to the bearer, to the amount of its stock actually paid in, but no more; and as the amount of stock deposits authorized to be made by the terms of the original charter was unlimited, the directors of the bank were empowered to limit the amount thereof by their by-laws to any sum which they deemed proper.

A by-law was subsequently adopted, limiting the stock deposits to one million four hundred thousand dollars, which made the whole stock consist of one million five hundred thousand dollars—the stock taken by subscription being one hundred thousand dollars thereof, which was denominated capital stock in the original charter.

It was admitted by the parties, in their pleadings, that at the date of the note sued on, the capital stock of one hundred thousand dollars had all been taken by subscription, and that the bank had no other stock, except the deposit stock, to dispose of.

1. The capital stock of a bank consists of the money paid in on the stock subscribed by the stockholders; and all stock when paid in is capital stock. There is no difference between the stock originally subscribed for in the "Trust Company Bank," and that obtained by deposits.

The capital of a bank consists of the money paid on the stock by the stockholders; and all stock, when paid for, is capital stock. There was no real difference, therefore, between the stock originally subscribed for and that which was obtained on deposits; the difference was merely nominal; the money paid for either description of stock constituted part of the capital of the bank, and consequently all the stock paid for was capital stock.

The question then is, was the transaction under consideration of such a character as constituted the defendants stockholders, or was it illegal and unauthorized, and the note sued on, therefore, unenforcible against the makers.

It was contended, in argument, that deposit stock could only be created, under the terms of the chart-

er, in single shares, and that only by a deposit of a sum under one hundred dollars, which was allowed to remain on deposit until it, with the dividends thereon to which it should be entitled, amounted to a share. This, in our opinion, is not a correct exposition of the meaning of the charter. Any depositor might become a stockholder to the amount of his deposit, and if the sum deposited was under one hundred dollars he was still to be regarded as a stockholder, and entitled to dividends, as such, on the amount deposited, but such dividends were not to be withdrawn, but were to be added to the deposit, un- ·til the amount should be equal to a share. This last provision was evidently intended for the benefit of small depositors, but there was nothing in the charter which excluded any depositor from becoming a stockholder to the amount of his deposit.

Had the bank, however, a right to treat the note of the defendants as money on deposit, or in other words, to receive the note instead of the money, in payment of stock?

It was certainly the duty of the bank to have required the stock to be paid for in money, but having received the note in payment, in lieu of money, by which the note has assumed the character of a *stock* note, the question is, can the defendants object to the payment of it on the ground that the bank improperly received their note in payment of the price of the stock, instead of requiring them to pay the money, as it should have done?

To permit the defendants to avail themselves of such an objection to exonerate them from their liability on the note, would be in utter subversion of the plainest dictates of justice, and inconsistent with the well established principle that no man shall take advantage of his own wrong. The defendants attained the object they had in view by the execution of the note; they acquired a right to the stock which they purchased; were recognized by the bank as stockholders; and upon their stock, and to the full

2. Though it was the duty of the Trust Company Bank to have required that the stock subscribed for should be paid in money, yet if they thought proper to receive a note in lieu of the money, and treat it as capital stock, the obligors in such note cannot avoid the payment of such note, they will not be permitted to take advantage of their own act to prejudice the public who confided in them.

FINNELL, &c.
vs.
SANDFORD, &c.

amount thereof, notes of the bank were put in issue and circulated as currency—the defendant, Sandford, being the president of the bank at the time, and controlling and superintending the whole arrangement. The bank had at that time deposit stock, as it was denominated, still to dispose of. It had power to make such contracts for the sale of it, as were not inconsistent with the terms and intention of the charter. It could sell and dispose of it for money without going through the useless formality of first depositing the money and then applying it to the payment of the stock, when the same object could be accomplished by its direct payment, as the price of the stock which was purchased. If the bank thought proper to accept from the defendants their promissory note instead of money, in payment of the price of the stock which they purchased, they have no right to object to its validity, for by paying the money now they will only be doing that which they should have done at the time they purchased the stock. The arrangement was made for their benefit and convenience, and even if the other stockholders had a right to complain of it they have not done so. Justice, therefore, to the community and to all the parties interested, requires that the defendants should be compelled to pay the note which was the price of the stock they purchased.

In the case of the *Vermont Central Railroad Company vs. Clayes*, 21 *Vermont Reports*, 30, where an individual had subscribed for fifty shares of the capital stock, and instead of paying to the commissioners in money, five dollars on each share at the time of subscribing, as required by the charter, he gave them his promissory note for that amount, being two hundred and fifty dollars ; it was held that the note was given upon sufficient consideration, and was a valid note in the hands of the corporation, upon which an action could be maintained. And it was decided by this court in the case of *Wight vs Shelby Railroad Company*, 16 *B. Mon.*, 7, that subscribers for stock,

could not exonerate themselves from liability for their subscriptions on the ground that they had failed to pay in money at the time they subscribed for the stock, the sum which the charter required to be then paid. The same doctrine was held by the court, in the case of *Selma vs. Tennessee Railroad Company*, 5 *Alabama Reports*, 787.

The principle upon which these cases were decided, sustains our conclusion, that the defendants cannot exonerate themselves from the payment of the note in question, on the ground that the bank should not have received it, but should have demanded the money for the stock, which the defendants purchased. If, under the charter, a sale of stock could not be made, unless the money was paid, still a contract for a sale of it was not prohibited, and being one of the means necessary to enable it to effect a sale, the right to make the contract might be regarded as a power which it could lawfully exercise. Viewed in this aspect, the contract with the defendants was legal and valid, and remains executory, until they pay the money, when, and not before, sale of the stock will be complete, and they will be invested with all the rights of stockholders in the corporation. The fact that the bank regarded and treated them as stockholders, and made an issue of its notes, upon their stock, as if it had been paid for, only proves that it acted in that respect unlawfully, but does not operate to lessen in any degree the defendants, liability. And it certainly should not be permitted to have this effect, when it is recollected that these acts were all done not only with the approbation of one of the defendants, but immediately under his direction and supervision, as the president of the institution.

The ground assumed by way of defense, that the collection of the note sued on, was not necessary for the redemption of the notes of the bank, which had been put into circulation because the other available assets were sufficient for that purpose, cannot relieve the defendants from the payment of this note.

3. Nor is it any defense to a suit upon such stock note to alledge that there are sufficient funds to meet the debts of the company, without enforcing its collection.

They have no right to any advantage over other stockholders. If after all the liabilities of the bank were discharged, there should remain a surplus, to be divided amongst the stockholders, they of course would be entitled to their rateable proportion thereof, and to that extent would have an equitable defense, and a right to retain that amount in their own hands, and have it deducted from the debt sued for. This, however, is the full extent of their right, to withhold the payment of the money, which they owe on amount of the stock which they purchased, and which has not been paid for. They stand on an equal footing, as to liability, with other stockholders, and neither the character of the transaction, the circumstances under which it occurred, nor their actual legal liability, entitles them to an exemption from any of the consequences, resulting from the attitude in which they have placed themselves.

The demurrer to that part of the defendants' answer, which relied upon this matter, as a defense to the action, should therefore have been sustained.

The defendant Park in his answer denied that the notes sued on were executed by him, or with his authority, and averred they were not his act and deed. The paragraphs in his answer are not numbered, and we are therefore, unable to determine, whether the plaintiff's demurrer was sustained, or overruled to this part of his answer. It seems to have been sustained, as to the first paragraph in the answer, and overruled as to the second. We would not, therefore, be understood, as deciding that he cannot rely upon that defense, and we only advert to it now, to repel any inference that might arise from our silence on the subject, that such was the determination of the court.

A judgment was rendered against Sandford on the note for twelve thousand five hundred dollars, and he has prosecuted a cross appeal for its reversal. He relied substantially upon the same defense against it, that he did against the other note for thir-

ty seven thousand five hundred dollars, and alledged that it was actually given in payment for stock, and not for money drawn from the bank. It appears, however, that the stock was purchased in April, 1854, at which time the sum of twelve thousand five hundred dollars in money was paid, in a check on the Savings Bank of Cincinnati, and the money for which the note was given was not withdrawn from the bank, until the month of October next thereafter, at which time the note was executed. The stock, therefore, must be regarded as having been paid for in money, and the note as having been executed for money. The liability of Sandford on the note is unquestionable, and the judgment for the amount of it was properly rendered against him. That judgment is, therefore, affirmed.

But the judgment in bar of the plaintiffs' action on the note for thirty-seven thousand five hundred dollars, is reversed as to both the defendants, and cause remanded with directions to sustain the demurrer, to that part of the answer of the defendants which is herein decided to be insufficient, and for further proceedings consistent with this opinion.